JULIUS YOUNG JEWELRY MANUFACTURING CO., INC., et al., Appellants, v DELTA AIR LINES et al., Defendants, and ALLIED AVIATION SERVICE COMPANY, INC., et al., Respondents.

First Department, March 20, 1979

APPEARANCES OF COUNSEL

*C. Raymond Nelson* of counsel *(Eugene Wollan* with him on the brief; *Rein, Mound & Cotton,* attorneys), for appellants.

*R. Scott Daly* of counsel *(Matthew J. Corrigan* with him on the brief; *Mendes & Mount,* attorneys), for respondents.

## OPINION OF THE COURT

KUPFERMAN, J. P.

This is an appeal from a partial summary judgment for defendants Allied Aviation Service Company, Inc., Allied Aviation Service Company of New York, Inc., and Allied Maintenance Corp. (hereinafter collectively referred to as defendant "Allied"), limiting plaintiffs' *ad damnum* clause to $1,338 thereby reducing the potential recovery from the $55,000 claimed as damages, on the ground that the liability limitations of the Warsaw Convention[1] ("the Convention", 49 US Stat, 3000, TS 876, US Code, tit 49, § 1502) entitle defendants to that relief.

We are not asked to (and we do not) address ourselves to the sufficiency of the complaint. Rather, the appeal presents a question of seeming first impression for a State appellate court, of whether agents of air carriers are entitled to assert as a defense the liability limitations of the Warsaw Convention. (Kreindler, Aviation Accident Law, § 11.05[6], Matthew Bender rev ed Supp 1975.) We declare that these agents are entitled so to do and affirm as to that, but the order should be modified to delete the damage limitation inasmuch as plaintiffs may be able to present evidence of willful misconduct or other default that would avoid the limitations in accordance with subdivision (1) of article 25 of the Convention.

On April 6, 1974, plaintiffs' representative checked jewelry sample cases owned by plaintiffs and valued at $55,000 as regular baggage in connection with international air transportation from Nassau, Bahamas, to Bermuda with an intermediate stop at JFK International Airport in New York City. The baggage was lost sometime during the course of its transfer from a Delta Air Lines flight to an Eastern Airlines flight. Defendant Allied is an independent contractor engaged by defendant Delta and other air lines to perform interline baggage transfer services between connecting airlines at JFK.

---

1. For a recent analysis in depth see "The Warsaw Convention-Does it Create a Cause of Action?" by Glenn Pogust, 47 Fordham L Rev 366 *et seq.*

The Convention expressly limits the liability of "carriers", article 22, without defining that term. The Hague Protocol, to which the United States does not yet adhere, specifically includes servants and agents of carriers under the Convention's liability limitations. (For the text of the Protocol, together with the original Convention, see House Comm on Science and Astronautics, Air Laws and Treaties of the World, 87th Cong, 1st Sess 1332-1370 [1961].)

As an agent for the carriers, Allied contends it is merely an extension of the corporate enterprise and performs an enterprise function, a service each carrier itself would have to provide by its own employees. Allied urges construction of the term "carrier" to include agents for reasons similar to those advanced in the recent case of *Reed v Wiser*[2] (555 F2d 1079, cert den 434 US 922), which held that the Convention's coverage of "carrier" included the carrier's employees. Although that holding only applied to employees or servants, its rationale can readily be extended to agents.

As a treaty, the Warsaw Convention is the supreme law of the land. (US Const, art VI, cl 2.) The Convention should be interpreted to effectuate its evident purposes. *(Bacardi Corp. v Domenech,* 311 US 150, 163.) The fundamental purposes of the Convention are to limit liability so as to fix costs to airlines at a definite level and to establish a uniform body of worldwide liability rules to govern international aviation to aid recovery by users. While it is contended by plaintiffs-appellants that the failure of the United States to sign the Hague Protocol amendment leads to the conclusion that agents are not covered by the original Convention, the Second Circuit in *Reed (supra)* took the position that the specific inclusion of servants and agents in the Hague Protocol was more likely a clarification of the Convention. That court referred to statements by participants at the Hague Conference expressing their belief that the Convention regulated not only the liability of the carrier, but at the same time that of its servants and agents, and that from a legal point of view, the carrier and its servants and agents were the same person. *(Reed, supra,* pp 1083-1084.)

*Husserl v Swiss Air Transp. Co.* (388 F Supp 1238, 1245) asserted that article 24 intended the Warsaw system to specify the exclusive relief available for the types of damage described

2. See n 1, *supra,* p 383.

in articles 18 and 19 (relating to baggage). This view was upheld and expanded in *Reed (supra,* pp 1084-1085) which quoted with approval Professor Drion, Netherlands representative to the 1955 Hague Conference and commentator on the purposes of the Convention.

"It is believed that a sound interpretation * * * leads to the conclusion that any action brought against the carrier's enterprise as such, or against members of it who can be considered part of the enterprise, are to be brought subject to the limits of Article 22. * * * Any other solution would defeat the purpose of Article 24, which is to prevent claimants from avoiding the provisions of the Convention by suing the enterprise outside the contract of carriage." (Drion, Limitation of Liabilities in International Air Law, 158.)

To allow an agent such as Allied, which is performing services in furtherance of the contract of carriage, and in place of the carriers themselves, to be liable without limit would circumvent the Convention's purposes of providing uniform worldwide liability rules and definite limits to the carriers' obligations. Nor do we see a sufficient basis for departing from the principle of the *Reed* case. (See *Leppo v Trans World Airlines,* 56 AD2d 813, 814.)

We are fortified in this conclusion because permitting circumvention in this manner would be inappropriate considering the Convention's express provision in subdivision (2) of article 22 for consignors to avoid the damage limitations applicable to baggage by declaring an increased value at the time of delivery. Plaintiffs' representative did not avail himself of this opportunity to cover the full extent of his loss. Further, there was no privity between plaintiffs-appellants and Allied, and their only relationship arises by virtue of Allied's employment by the carriers.

Accordingly, we hold that the liability limitations of the Convention apply to an air carrier's agent performing functions the carrier could or would, as here, otherwise perform itself. The order of the Supreme Court, New York County (M. EVANS, J.), entered on December 29, 1977, should be modified, on the law, to delete the specific damage limitation, and otherwise affirmed, without costs.

EVANS, SANDLER, LANE and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on December 29, 1977, modified, on the law, to delete the specific

damage limitation, and otherwise affirmed, without costs and without disbursements.